UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dan Buel,                                                  Case No. 3:13-cv-00012

           Plaintiff

           v.                                      MEMORANDUM OPINION
                                                           AND ORDER

The Toledo Hospital,

           Defendant

This matter is before me on Defendant Toledo Hospital's motion for summary judgment (Doc. No. 19). Also before me is Plaintiff's opposition (Doc. No. 22) and Defendant's reply (Doc. No. 23) thereto. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. For the reasons stated below, Defendant's motion is granted.

## BACKGROUND

The following facts are undisputed. Dan Buel was employed as a Flight Follower in ProMedica's Transportation Network, a division of The Toledo Hospital ("TTH"). Buel's employment began in December 2007. In his capacity as a Flight Fowler, Buel dispatched helicopters and ambulances, took incoming calls, scheduled transports, and would perform quality assurance of calls. He worked seven days every two weeks and his shift was from 6:00 p.m. to 7:00 a.m.

Buel applied for and was granted his first intermittent leave under the Family and Medical Leave Act from April 23, 2010 through October 1, 2010. A second FLMA leave, which provided

for a maximum of two days off per month, was granted from October 24, 2010 through April 24, 2011.

Contemporaneous with his employment, Buel was also a volunteer firefighter for the Swanton Fire Department. From time to time his volunteer position required him to respond to emergencies and those calls interfered with his job at TTH.

Buel's supervisor, Steven Steinmetz, met with him on September 19, 2011, to advise him that his FMLA time had expired. The next day, Buel visited his physician, Dr. Conlan, and obtained another FMLA certification form. Buel faxed the form to Linda Bennett, an administrative secretary, on October 5, 2011. Ms. Bennett then faxed the form to Cynthia Craven, the HR Service Coordinator on the same date. Ms. Craven's duties include processing FMLA leaves. She thought the form looked out of the ordinary "because it provided for up to 12 days off per month, which is a very high number, and because the "1" was at an odd angle." (Craven Aff. at ¶ 3).

Craven then conferred with Bernice Chisholm, RN, the HR Leave of Absence Specialist, who confirmed with Dr. Conlan's office that the frequency or number on the form approved by the physician was two times per month. (Chisholm Affid. at ¶ 4). Buel was approved for FMLA leave for two days per month and Craven "did not notify Mr. Buel's department at this time of any discrepancy in his paperwork." (Craven Aff. at ¶4).

In November 2011, Buel came to understand that his FMLA paperwork needed to be resubmitted as the first submission did not get to the right person. (Buel Dep. at 27-28). Buel again faxed the paperwork to Linda Bennett. (Id.)

On December 7, 2011, Craven learned that Buel may have exceeded his allotment of FMLA leave. (Craven Aff. at ¶ 5). The HR office then reconfirmed with Dr. Conlan that Buel was authorized for two days of FMLA leave but he had not been back to the doctor's office since

2

September 20, 2011. (Chisolm Aff. at ¶ 6). In her affidavit, Linda Bennett averred that she believed Cynthia Craven advised her that Buel's paperwork "appeared to have been altered." (Bennett Aff. at ¶ 4). Bennett advised Steinmetz of this development. Steinmetz then requested copies of Buel's paperwork from Craven.

Steinmetz met with Buel on December 15, 2011, indicating there were issues with his FMLA paperwork. Additionally, Steinmetz requested copies of the original documentation provided by Dr. Conlan. (Steinmetz Aff. at ¶ 6). On January 6, 2011, Steinmetz inquired again about requested documentation. An email on this same issue was sent by Steinmetz to Buel on January 11, 2011. (Id at ¶ 10).

By mid-January 2012, Buel provided a copy of his FMLA paperwork to Steinmetz. (Buel Dep. at 35-37). Steinmetz then attempted to set up a meeting with Buel and Chad Premo, Steinmetz's superior. When questioned by Buel as to the purpose of the meeting, Buel was advised of concerns that the "documentation was altered." (Buel Deposition, Def's Exh. M). A meeting took place with Buel, Steinmetz, and Premo on February 16, 2012. At the meeting, Buel denied altering the documentation and was unable to offer an explanation as to how the alteration occurred. (Buel Dep. at 42-43). Buel acknowledges that he obtained the form from his physician and had sole control of the document until the time he faxed it to Bennett. (Id. at 43).

TTH terminated Buel's employment on February 24, 2012, for falsification of facility records.

In December, 2012, Buel initiated this lawsuit against TTH alleging disability discrimination under Ohio law, FMLA interference and retaliation, defamation, and a violation of the Ohio volunteer firefighter statute, Ohio Rev. Code § 4113.41(D). Following the completion of discovery, Defendant filed this motion for summary judgment on all claims.

3

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822

4

F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## CLAIMS UNDER THE FAMILY MEDICAL LEAVE ACT

**Interference Claim**

In order to establish a prima facie case of interference under the FMLA, a plaintiff must establish the following:

> (1)That []he was an eligible employee; (2) the defendant was an employer as defined under the FLMA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of h[is] intention to take leave; and (5) the defendant denied the employee FMLA benefits to which []he was entitled.

*Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). A plaintiff bears the burden of establishing these elements by a preponderance of the evidence. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

In this instance, there is no dispute the first four elements are present. The dispute centers over the fifth element and whether denial of FMLA benefits has been established. The Defendant

5

argues the fifth element is not met because Buel cannot show he was entitled to leave under the FMLA. Plaintiff, in contrast, contends he was denied the leave to which he was entitled. I find the fifth element is not satisfied but for reasons different from those articulated by the Defendant.

Buel's request for intermittent FMLA leave was received by the Defendant on September 22, 2013. (Buel Dep., Def's Exh. F). On October 5, 2011, Defendant's HR department confirmed with the physician the certification for leave was for two times per month. (*Id.* at 3). On October 18, 2011, the Defendant's Leave of Absence—Employer Response Sheet stated, "Your Request for Leave of Absence (LOA) is Approved for the following time frame: 10/05/11 to 9/20/12." (*Id.* at Def's Exh. G). Defendant's reliance on *Smith v. The Hope School*, 2008 WL 1722194 (C.D. Ill. 2008), is distinguishable from the case at bar because the plaintiff in *Smith* was never approved for FMLA leave and denial of her leave request was based in part on her altered FMLA paperwork.

Neither Buel nor the Defendant present evidence the Plaintiff was denied FMLA leave prior to his termination, nearly four months after his FMLA leave was approved. Based on a preponderance of the evidence standard, I find Buel was not denied benefits to which he was entitled and that he has not established a prima facie case on his claim of FMLA interference.

Assuming *arguendo*, that a prima facie case has been established, the Sixth Circuit also applies the *McDonald Douglas* framework to interference claims under the FMLA. *Donald v. Sybra, Inc.*, 667 F.3d at 762. As correctly noted by Defendant, where an employer can demonstrate it had a "legitimate reason unrelated to the exercise of FMLA rights for terminating the employee," the burden shifts to the plaintiff to demonstrate "the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination." *Id.*, citing *Grace v. USCAR*, 521 F.3d 665, 670 (6th Cir. 2008).

6

Defendant's reason for terminating Buel was based upon the falsification of his FMLA certification form and "for falsifying facility records, [ ] a terminable offense under Policy #600, Group IV, #2 of those Policies and Procedures." (Steinmetz Affid. at ¶ 12). This constitutes a legitimate business reason sufficient to meet Defendant's burden. The burden now shifts to the Plaintiff to demonstrate pretext.

Buel must therefore establish the Defendant's stated reason had no basis in fact, did not motivate his termination, or was insufficient to justify his termination. There is consensus by the Plaintiff that the first form was altered, however; Buel claims that because Ms. Bennett did not look at the form at the time it was faxed to her, there is a question of material fact as to the alteration. Stated differently, because the Defendant cannot affirmatively demonstrate Buel altered the form and because there was no investigation by the hospital that someone else altered the form, this constitutes a genuine issue of material fact. I disagree.

Buel has not demonstrated the Defendant's reason for termination, an altered FMLA certification form, had no basis in fact. He disputes altering the form. At his deposition Buel conceded that he was the only one in possession of the form from the time he walked out of the doctor's office until it was faxed to the Defendant. (Buel Dep. at p. 22). Nor could Buel provide an explanation as to how the form was altered. (*Id.* at pp. 22-23). Without more, this is insufficient to demonstrate pretext.

A similar situation existed in *Rhynes-Hawkins v. Potter*, 2009 WL 5031312 (W.D. Tenn. 2009), where a plaintiff was terminated for falsification of FLMA recertification form. The district court there found no issue of material fact despite the plaintiff's protestations that someone in the FMLA office had altered her form. *Id.* at *11. In *Yasmeen v. Hospira,Inc.*, 2007 WL 3254923 (D. Utah 2007), the trial court found the plaintiff's interference claim to be without merit as it found no genuine

issue of material fact on the reason for her termination noting "the FMLA will not shield an employee from termination for allegedly falsifying an FMLA form." *Id.* at *4.

As Buel is unable to establish the Defendant's reason for his termination were a pretext for interference with his right to intermittent FMLA leave[1], Defendant is entitled summary judgment on the FMLA interference.

**Retaliation**

A plaintiff establishes a prima facie case of FMLA retaliation by showing the following:

(1) [that] []he was engaged in an activity; (2) the employer knew that []he was exercising h[is] rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to h[im]; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Donald v. Sybra, Inc.*, 667 F.3d at 761, citing *Killian v. Yorozu Auto Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006). In the absence of direct evidence and where the prima facie case is established, an FMLA retaliation claim is then evaluated under the *McDonnell Douglas* burden shifting paradigm. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 284 (6th Cir. 2012).

The Defendant contends no prima facie case is established since there is no protection for an employee who submits a falsified FMLA medical certification form.

Setting aside the altered form for a moment, Buel was engaged in an activity protected under the FMLA insofar as he was seeking approval for intermittent FMLA leave. Next, there is no dispute TTH was aware Buel was exercising his rights under the FMLA in submitting a medical certification from his physician in support of his FMLA leave. Buel submitted his intermittent FMLA request in early October 2011, which was then approved on October 18, 2011. As he was

---

[1] Additionally, I need not address the Defendant's "honest belief" argument as the Sixth Circuit recently cast doubt on the applicability of such a theory in an FMLA interference claim. *See Tillman v. Ohio Bell Telephone Co.*, __Fed.__, 2013 WL 5539612 *11-13 (6th Cir. Oct. 8, 2013). If, however, the "honest belief" rule applies to FMLA interference claims, Defendant would be entitled to summary judgment for the same reasons as those articulated under the FMLA retaliation analysis, *infra*.

8

terminated from his employment in February 2012, after exercising his FMLA rights, the third factor is satisfied.

This leaves the fourth factor, a causal connection between the protected FMLA activity and his termination. No causal connection has been established between Buel's exercise of his right to intermittent FMLA leave of two times per month and his termination because his termination was due to falsification of the FMLA certification form, an activity not protected by the FMLA. *See e.g., Killian*, 454 F.3d at 556. Therefore, I cannot find that Buel has established a prima facie case of FMLA retaliation.

Like the interference claim, I find even if a prima facie case has been established, the Defendant has articulated a legitimate, nondiscriminatory reason for terminating Buel's employment. This shifts the burden of establishing pretext which requires the Plaintiff to demonstrate the reason for his termination "(1) had no basis in fact; (2) did not actually motivate the action; or (3) was insufficient to warrant the action." *Seeger,* 681 F.3d at 285.

Buel contends there is a genuine issue of material fact because the Defendant failed to prove the Plaintiff altered the form nor could TTH have honestly believed he altered the form. The "modified honest belief" rule has been explained by the Sixth Circuit as follows:

> '[T]o avoid a finding that its claimed nondiscriminatory reason was pretexual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.' *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (quoting *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006)). The employee, in turn, "must be afforded the opportunity to produce evidence to the contrary, such an error on the part of the employer is 'too obvious to be unintentional.'" *Seeger v. Cincinnati Bell Tel. Co.,* 681 F.3d 274, 286 (6th Cir. 2012) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). To overcome the employer's invocation of the honest belief rule, the employee "must allege more than a dispute over the facts upon which [the] discharge was based. He must put forth evidence which demonstrates that the employer did not

9

> 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).

*Blizzard*, 698 F.3d at 286. The "honest belief" rule is applicable to FMLA retaliation cases. *See Tillman v. Ohio Bell Telephone Co.*, 2013 WL 5539612 *9 (6th Cir. Oct. 8, 2013). Where the employer makes a "reasonably informed and considered decision before taking an adverse employment action," the employer establishes a basis for its "honest belief." *Id.* citing *Seeger*, 681 F.3d at 285.

In this case, protestations "over the facts upon which his discharge were based," are insufficient to overcome the "honest belief" rule. Buel submitted his FMLA certification twice to Defendant, and TTW verified the proposed leave with his physician twice before advising his supervisor the suspicion of an altered form. He was advised of a problem with his form but was not terminated until nearly two and a half months after his supervisor was alerted to the alteration. An attempt to schedule a meeting was not successful until February 2012 and Buel was unable to provide an explanation for the alteration. His deposition testimony confirmed he had sole control of the form until he faxed it to Defendant.

Under these circumstances, it appears the Defendant has established its "honest belief" for the discharge based upon falsification of documents. TTH had enough information and took its time in assessing the situation before concluding it could reasonably rely upon the facts before it to discharge Buel for falsification of records. *See Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502-03 (6th Cir. 2007). As noted by this Circuit, an investigation need not "be optimal or [ ] le[ave] no stone unturned." *Seeger*, 681 F.3d at 285. (Citation omitted).

As Buel has not presented evidence to challenge TTH's "honest belief," there is no factual dispute and the Defendant is entitled to summary judgment on the FMLA retaliation claim.

**Disability Discrimination Under Ohio Law**

10

OHIO REV. CODE § 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of . . . disability . . . to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Because of the similarity between the Ohio and federal statutes regarding disability discrimination, district "courts may apply federal precedent to employment discrimination claims under Ohio law." *Sarvak v. Urban Retail Properties, LLC*, 524 Fed. Appx. 229, 233 (6th Cir. 2013).

The analysis begins with the familiar *McDonnell Douglas* burden shifting analysis. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Under that framework, Plaintiff has the initial burden of establishing a *prima facie* case of disability discrimination by showing "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 451 (6th Cir. 2007), *quoting Hood v. Diamond Prods, Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738, 739 (1996).

In this instance, the Plaintiff suffered from chronic depression and on the basis of his condition was entitled to intermittent FMLA leave. (Compl. at ¶6). It is unclear whether Plaintiff's condition constitutes a disability for purposes of Ohio Revised Code § 4112.01(13)[2]. Nevertheless, the Defendant contends the second prong of the prima facie test cannot be satisfied because Plaintiff cannot establish his termination was due, at least in part, to his handicapped status.

In his opposition to the Defendant's position, Plaintiff disputes the reason for termination articulated by TTH is "inconsequential as to Mr .Buel's prima facie case." (Opp. at 10). Plaintiff

---

[2] "Disablity" means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

11

concedes he was terminated but offers nothing to support that his termination was based, in part, upon his disability. Instead he argues the Defendant makes "no cognizable arguments" that Plaintiff cannot establish a prima facie case. Plaintiff misapprehends that it is his burden to establish a prima facie case. He argues there are issues of material fact relating to the investigation of the form's alteration which preclude summary judgment. I disagree. Thus far, Plaintiff has not produced any evidence which indicates his disability, at least in part, motivated TTH's decision to terminate his employment. Defendant is, therefore, entitled to summary judgment as a matter of law on this claim. *See e.g., Wagner v. Regional Med. Ctr. Of Ohio*, 194 Ohio App.3d 589, 957 N.E.2d 351, 354 (Ohio App. 2011) (summary judgment granted where plaintiff failed to establish a prima facie case as she did not point to evidence that her termination, at least in part, was based on disability).

**Failure-to-Accommodate Under Ohio Law**

In a failure-to-accommodate case, a plaintiff must demonstrate (1) that he was disabled; (2) his employer was aware of his disability; (3) he was an otherwise qualified person with a disability and satisfied the requirements for the position, could perform the essential functions of the position with or without reasonable accommodation. *Shaver v. v. Wolske & Blue*, 138 Ohio App.3d 653, 663-64, 742 N.E.2d 164, 171(10th Dist. 2000).

Here the Plaintiff offers nothing in support of this claim. His deposition testimony was that he did not require any accommodation apart from his intermittent FMLA, which he did not believe the Defendant prevented him from taking. (Buel Dep. at 46). Additionally, the Plaintiff's opposition brief does not address this claim or the arguments of the Defendant therein.

Accordingly, the Defendant is entitled to summary judgment as a matter of law on Plaintiff's failure-to-accommodate claim.

**Defamation**

Defamation is a "false and malicious publication against an individual made with an intent to injure his reputation or to expose him to public hatred, contempt, ridicule, shame, or disgrace or to affect him injuriously in his trade, business or profession." *Robb v. Lincoln Publishing (Ohio) Inc.*, 114 Ohio App.3d 595, 616,  683 N.E.2d 823 (1996).   A plaintiff must establish the following elements as to a claim sounding in defamation:  "(1) a false statement of fact was made about the plaintiff; (2) the statement was defamatory, (3) the statement was published, (4) the plaintiff suffered injury as a proximate result of the publication, and (5) the defendant acted with the requisite degree of fault in publishing the statement." *Sullins v. Raycom Media, Inc.*, 996 N.E.2d 553, 561 (Ohio App. 8th Dist. 2013), citing *Am. Chem Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389-90, 978 N.Ed.2d 832, 852 (2012).   The applicability of a qualified privilege to employers has been acknowledged by Ohio courts.  *Smith v. Ameriflora 1992, Inc.*, 96 Ohio App.3d 179, 187, 644 N.E.2d 1038, 1043(10th Dist. 1994).  In order to overcome that privilege, a plaintiff must establish the employer acted with actual malice.  *Id.*

At Plaintiff's deposition, he testified there were many individuals outside of the Defendant's organization who were recipients of the reasons for his termination but when asked for specific names, Buel was unable to provide that information.  (Buel Dep. at 47-48).  Plaintiff also indicated he was forced to tell prospective employers about the terms of his termination.  (*Id.*)

Ohio does not recognize the doctrine of "forced republication," *see Golem v. Village of Put-In-Bay*, 222 F.Supp.2d 924, 935 (N.D. Ohio 2002); however, an employer who "can prove the truth of the allegedly defamatory statement has an absolute defense." *Early v. The Toledo Blade*, 130 Ohio App.3d 302, 322, 720 N.E.2d 107, 121 (1998), citing *Shifflet v. Thompson Newspapers (Ohio) Inc.*, 69 Ohio St.2d 179, 187, 431 N.E.2d 1014, 1017 (1983).

The Defendant put the Plaintiff on notice as of December 2011 that there was a problem with his FMLA certification form.  The Defendant twice verified with Plaintiff's physician that the

13

intermittent FMLA leave to which he was authorized was two times per month. The Plaintiff was asked by his supervisor to provide him with the original form from his physician. Prior to the meeting with Steinmetz and Premo, Plaintiff was aware of Defendant's concern the form had been altered. At the meeting in mid-February, Buel was unable to offer any explanation for the alteration of the form. He acknowledged having sole control of the form after obtaining it from his physician until such time as it was faxed to the Defendant. Based upon these circumstances, the Defendant made the decision to terminate Plaintiff's employment based upon alteration of the form.

Based upon these undisputed facts, this situation does not rise to the level of actual malice. While Plaintiff challenges the thoroughness of Defendant's investigation, he offers no authority an employer must have irrefutable proof of wrongdoing. Absent a complete failure to investigate, the Defendant could have reasonably relied upon the facts in this case in determining Plaintiff's fate. As the Defendant's actions do not rise to the level of reckless disregard, TTH is also entitled to summary judgment on the defamation claim.

**Violation of Volunteer Firefighter Statute**

Under Ohio Rev. Code § 4113.41(A):

> No employer shall terminate an employee who is a member of a volunteer fire department, or who is employed by a political subdivision of this state as a volunteer firefighter, or who is a volunteer provider of emergency medical services because that employee, when acting as a volunteer firefighter or a volunteer provider of emergency medical services, is absent from or late to the employee's employment in order to respond to an emergency prior to the time the employee is to report to work.

The Defendant contends it is entitled to summary judgment because it terminated Plaintiff's employment for reasons not related to his activities as a volunteer firefighter. The Plaintiff argues there is a genuine issue of material fact to deny summary judgment based upon the comments of Plaintiff's supervisor. I disagree.

On October 31, 2011, Buel and Steinmetz had a meeting during which, according to Plaintiff, there was a heated exchange involving Buel's tardiness due to his work as a volunteer firefighter. (Buel Dep. at 23-24). The Defendant's Employee Communication Log characterizes this meeting as follows:

> Reviewed the conditions for excused absence related to volunteer fire responses. Covered the need to notify CC of intended absence, need to have paperwork from department validating response signed by his Fire Chief turned in within two weeks of the absence (this is a change from our past practice) also laid out the expectation that he is to report for his assigned shift immediately following the incident. Any additional responses which occur after his scheduled PTN start time will not be excused. (SSteinmetz)

(Buel Dep., Def's Exh. at 3). After this meeting, and outside the presence of Steinmetz, Buel was the subject of comments by two other supervisors, who did not have supervisory authority over him. The comments related to Plaintiff's duties as a volunteer firefighter and his primary responsibility to his job at TTH. (Buel Dep. at 49-50).

While these events support an inference that Plaintiff's supervisor was annoyed by Buel's tardiness due to his volunteer firefighter duties, there is no support that his volunteer firefighter duties were the reason Plaintiff was terminated. As discussed above, TTH articulated a legitimate business reason for the termination, i.e., alteration of an FMLA certification. Moreover, Buel has not established the proffered reason for termination was a pretext for the exercise of his FMLA rights, discrimination based upon disability, or his duties of a volunteer firefighter. As there is no genuine issue of material fact, the Defendant is entitled to judgment as a matter of law on this final claim.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment (Doc. No. 19) is granted in its entirety. This case is closed.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge